UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-03263-KK-MARx** | Date: | December 18, 2025 |
|---|---|---|---|

| Title: | ***Babblejit Kaur v. Pamela Bondi et al.*** |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

|  |  |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |

|  |  |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING in part Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 8]**

## I.
## INTRODUCTION

On December 6, 2025, Babblejit Kaur ("Petitioner"), an Immigration and Customs Enforcement ("ICE") detainee at Adelanto Detention Facility, filed the operative Petition for Writ of Habeas Corpus against respondents Pamela Bondi, Kristi Noem, F. Semaia, Jaime Rios, Joseph B. Edlow, D. Andrew Sanders, and the U.S. Department of Homeland Security ("Respondents"). ECF Docket No. ("Dkt.") 7, Petition ("Pet."). The same day, Petitioner filed an Ex Parte Application for a Temporary Restraining Order ("TRO") enjoining Respondents from excluding her from the United States. Dkt. 8, Application ("Appl."). On November 24, 2025, Respondents filed an Opposition. Dkt. 10, Opposition ("Opp.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED in part**.

## II.
## BACKGROUND

Petitioner, born in India, was paroled into the United States as an asylum seeker in 1994. Pet. ¶ 1. On February 11, 1997, an immigration judge denied her application for asylum and ordered her removed. Id. ¶ 3; see also Dkt. 7-6 at 1. Nearly thirty years later, on November 7, 2025, Petitioner filed a Form I-485 with U.S. Citizenship and Immigration Services ("USCIS") to adjust

her status to permanent resident.  Pet ¶¶ 32-33; see also Dkt. 7-3 at 1-2.  On December 1, 2025, when Petitioner showed up for her biometrics appointment, ICE agents appeared and detained her.  Pet. ¶¶ 36-37.  She is now detained at the Adelanto ICE Processing Center awaiting removal.  Id. ¶ 39.

On December 7, 2025, Petitioner filed the operative Petition against Respondents alleging the following counts:

**Count One:** Unreasonable delay in processing Petitioner's I-485, in violation of the Administrative Procedure Act ("APA");

**Count Two:** Unlawful detention, in violation of the Immigration Nationality Act ("INA");

**Counts Three & Four:** Unlawful detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution ("Due Process Clause");

**Count Five:** Unlawful detention and removal, in violation of the APA;

**Count Six:** Deprivation of counsel, in violation of the Due Process Clause;

**Count Seven:** Unlawful detention, in violation of the Due Process Clause.[1]

Pet. ¶¶ 40-66.  The same day, she filed the instant Application requesting to "order her immediate release and enjoin Respondents from removing her from the United States until she receives a final decision on her adjustment of status and waiver applications."  App. at 25.

On December 8, 2025, Respondents filed an opposition, arguing the Court lacks subject matter jurisdiction under 8 U.S.C. § 1252 ("Section 1252").[2]  Opp. at 2.

On December 17, 2025, Petitioner filed her ill husband's most recent medical records to substantiate her irreparable harm argument.  Dkt. 11 at 2.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The preliminary injunction and TRO standards are "substantially identical."  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A court may grant a TRO to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1).  Further, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

---

[1] Counts Three, Four, and Seven overlap substantially.  For the purposes of this Order, the Court will analyze only Count Seven.

[2] Respondents' Opposition addressed the merits of Petitioner's counts in one sentence: "If Petitioner's claims had any merit, she could have timely brought them long ago."  Opp. at 3.

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest. See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under that standard, the four Winter factors are "balanced, so that a stronger showing of one [factor] may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . that tips sharply toward the plaintiff," so long as the other Winter factors are met. Id. at 1132.

## IV.
## DISCUSSION

### A.    JURISDICTION

#### 1.    Applicable Law

"A federal court must always satisfy itself that it has jurisdiction." Riley v. Bondi, 606 U.S. 259, 273 (2025). Section 1252(g) strips jurisdiction over "any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to . . . execute removal orders against any [noncitizen]." 8 U.S.C. § 1252(g). Similarly, a district court lacks jurisdiction to review factual and legal challenges to a removal order. See id. §§ 1252(a)(5), (b)(9); see also J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process.").

#### 2.    Analysis

##### a.    The Court Lacks Jurisdiction To Delay Petitioner's Removal

Here, Petitioner first asks the Court to enjoin her removal "until she receives a final decision on her adjustment of status and waiver applications." App. at 25. Because this request for a delay attacks "when" the Attorney General may remove her, the Court lacks jurisdiction to review it. See Rauda v. Jennings, 55 F.4th 773, 777 (9th Cir. 2022) ("The execution of his removal order is precisely what Matias challenges here.").

Petitioner's attempt to dodge Section 1252(g) are unavailing. Resting on three cases, she claims the Attorney General cannot "execute [a] removal order that would violate [her] statutory right to apply for adjustment of status." Appl. at 16. Her first two cases were decided pre-Rauda and are not persuasive. See id. at 16-17. Oddly, Petitioner's final case is Rauda itself. Id. at 17. She claims Rauda implies that Section 1252(g) is not triggered if seeking discretionary relief from removal requires the Petitioner be in the United States. See Appl. at 17-18. That reading of Rauda is misguided. See Poghosyan v. U.S. Dep't of Homeland Sec., No. 25-cv-03091-SB-ADSx, 2025 WL 1287771, at *3 (C.D. Cal. May 1, 2025) (finding, where the petitioner made an identical argument, "the holding in Rauda does not turn on that distinction"). Rather, the Rauda court's jurisdiction inquiry began and ended with Section 1252(g)'s "plain text." 55 F.4th at 777 ("Matias seeks to . . . enjoin 'action by the Attorney General to . . . execute removal orders against [Matias].' Congress has

explicitly precluded our review of this claim." (quoting 8 U.S.C. § 1252(g))); see also Ibarra-Perez v. United States, 154 F.4th 989, 999 (9th Cir. 2025) ("We held [in Rauda] that the Attorney General's decision as to when to execute Rauda's valid removal order was a discretionary decision shielded by § 1252(g) from judicial review."); Poghosyan, 2025 WL 1287771, at *3 (finding Rauda's conclusion "[relied] on the statute's plain language"). Petitioner's attempt to distinguish Rauda thus fails.

"No matter how [Petitioner] frames it, [her] challenge is to the Attorney General's exercise of [her] discretion to execute [Petitioner's] removal order." Rauda, 55 F.4th at 777. Accordingly, the Court lacks jurisdiction over Petitioner's request to enjoin Respondents from removing her.

### b.    The Court Has Jurisdiction To Enjoin Petitioner's Re-Detention

Here, Section 1252 does not bar Petitioner's unlawful detention claim. First, Petitioner's claim does not fall under the sweep of Section 1252(g) because it does not challenge Respondents' decision to "execute a removal order," nor the other triggering actions. Rather, she argues that Respondents' "arrest violated due process." App. at 25. This does not amount to a challenge to the legitimacy of the removal proceedings or any removal order. Perez v. LaRose, No. 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *2 (S.D. Cal. Nov. 13, 2025).

Second, Petitioner's claim does not conflict with Sections 1252(a)(5) or 1252(b)(9) because she does not challenge an order of removal. Respondents misunderstand these provisions. They were "intended to 'channel judicial review over final orders of removal to the courts of appeals' – 'not 'foreclose all judicial review of agency actions' touching on deportation proceedings writ large.'" Salvador v. Bondi, No. 25-cv-07946-MRA-MAAx, 2025 WL 2995055, a *4 (C.D. Cal. Sep. 2, 2025) (quoting J.E.F.M., 837 F.3d at 1031). "[C]ramming judicial review of [fact or law] questions into the review of final removal orders would be absurd." Jennings, 583 U.S. at 293. Because Petitioner's unlawful detention claim "is not directed to her final order of removal," Sun v. Santacruz, EDCV 25-02198-JSL-JCx, 2025 WL 2730235, at *4 (C.D. Cal. Aug. 26, 2025), neither provision precludes judicial review.

Accordingly, Section 1252 does not strip the Court of habeas jurisdiction over Plaintiff's unlawful detention claim.

## B.    RESPONDENTS ARE ENJOINED FROM DETAINING PETITIONER WITHOUT A PRE-DETENTION HEARING

### 1.    Likelihood of Success on the Merits

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In deciding what process is due, courts consider: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews v. Eldridge, 424 U.S. 319, 321 (1976).

### a.    Liberty Interest

The first factor favors Petitioner. "Freedom from imprisonment" is the Due Process Clause's lodestar. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Clause "applies to all 'persons' within the United States," including those "subject to a final order of deportation." Id. at 693; see also Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *6 (N.D. Cal. Sep. 26, 2025) ("Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release."); Sun, 2025 WL 2730235, at *5 ("Sun's private interest in remaining out of immigration custody is substantial."). Here, Petitioner was paroled into the United States in 1994 as an asylum seeker, Pet. ¶ 25; see also 8 U.S.C. § 1182(d)(5)(A), giving her "free[dom] to be with family and friends and to form the other enduring attachments of normal life," Morrisey v. Brewer, 408 U.S. 471, 482 (1972). Further, in paroling her, the government had to determine whether she "pose[d] a danger to property or persons" and was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Respondents do not argue these circumstances have changed, nor does the record suggest so. Thus, Petitioner has a liberty interest in her continued freedom until Respondents execute her removal.

### b.    Risk of Erroneous Deprivation

The second factor also favors Petitioner. As noted above, Petitioner was paroled into the United States as an asylum seeker and, thus, was necessarily determined not to be a flight risk or danger to the community. On this record, nothing has occurred since then that would suggest Petitioner no longer meets these criteria. In fact, the record suggests otherwise, as Petitioner has no criminal history and routinely stays home to care for her husband with leukemia. Appl. at 24. Thus, without a "pre-detention hearing in front of a neutral arbiter," the risk that Petitioner will be unjustifiably detained is quite high. Valencia Zapata, 2025 WL 2741654, at *10.

### c.    Government's Interest

The final factor favors Petitioner as well. Like other district courts have ruled, the government's interest in re-detaining Petitioner without a pre-detention hearing is low "because [the government] previously made the determination to release [her], and there is no evidence in the record of any changed circumstances [the government] to reconsider its parole determination." Valencia Zapata, 2025 WL 2741654, at *11 (collecting cases).

### d.    Mathews Conclusion

All three Mathews factors favor Petitioner. Accordingly, Petitioner has shown a serious question as to whether Respondents have afforded constitutionally sound due process.[3]

### 2.    Likelihood of Irreparable Harm

"Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez v. Sessions, 872 F.3d 976, 994 (9th

---

[3] Petitioner also argues she is likely to prevail on her APA, INA, and other Due Process Clause counts. See App. at 19-21, 24-25. The Court need not reach these issues given the likelihood of success on her pre-detention hearing count. See Sun, 2025 WL 2730235, at *5 ("[A] showing of a 'likelihood of success on even just one claim is sufficient [for injunctive relief] as long as that claim would support the injunctive relief sought.'" (citation modified)).

Cir. 2017)).  Further, immigration detention imposes collateral irreparable harms on noncitizens'
families, including economic burdens and harms to children whose parents are detained.
Hernandez, 872 F.3d at 995.  As explained above, Petitioner has likely been unlawfully re-detained
and, since re-detention, has been unable to care for her sick husband.  See App. at 2.  Accordingly,
Petitioner's harm would be irreparable if she is detained any further without a hearing.

### 3.     Balance of Equities and Public Interest

The final two Winter factors "merge when the Government is the opposing party."  Nken v.
Holder, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized "neither equity nor the public's
interest are furthered by allowing violations of federal law to continue."  Galvez v. Jaddou, 52 F.4th
821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging
the government violated the INA).  Specifically, in cases involving removal, "there is a public
interest in preventing [noncitizens] from being wrongfully removed."  Nken, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on her constitutional
claims, the balance of equities and public interest "tips sharply" in her favor.  All. for the Wild
Rockies, 632 F.3d at 1135.  Faced with "a conflict between [administrative] concerns and
preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships
tips decidedly in [Petitioner's] favor."  Hernandez, 872 F.3d at 996.  Thus, these factors weigh in
Petitioner's favor.

\*     \*     \*

In sum, Petitioner has shown there are serious questions going to the merits of her
procedural due process claim, that the balance of hardships tips 'sharply' in her favor, and that the
other two Winter factors are satisfied.  Accordingly, a TRO enjoining her continued re-detention
absent a pre-detention hearing is warranted.

### V.
### CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.     Petitioner's Ex Parte Application for Temporary Restraining Order is **GRANTED**
in part and **DENIED** in part;
2.     Respondents are enjoined from detaining Petitioner unless they provide her with a
pre-detention hearing before a neutral decisionmaker where Respondents bear the
burden of demonstrating by clear and convincing evidence that Petitioner is a flight
risk or a danger such that his physical custody is required;
3.     Petitioner is not required to secure a bond, as the government has provided no
evidence of costs it will incur in releasing Petitioner, see Jorgensen v. Cassiday, 320
F.3d 906, 919 (9th Cir. 2003) ("[A court] may dispense with the filing of a bond
when it concludes there is no realistic likelihood of harm to the defendant from
enjoining [their] conduct."); and
4.     Respondents are **ORDERED TO SHOW CAUSE in writing no later than seven
(7) days from the date of this order** why the Court should not issue a preliminary

injunction.  Petitioner may file a Reply **no later than ten (10) days from the date of this order**.

**IT IS SO ORDERED**.